

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer P. Rainey, President
The University of Texas
Austin, Texas

Dear Sir:

Opinion No. 0-4194
Re: Whether, under the will of Mrs.
Jennie Sealy Smith, under the
conditions described, the Board
of Regents of the University of
Texas will be possessed with the
right of control and management
of the R. Waverley Smith Memo-
rial Pavilion.

You have requested the opinion of this department upon the matter described in detail by your letter as follows:

"Under the will of the late Mrs. Jennie Sealy Smith, provision was made for the erection, furnishing and equipping of a hospital building in the City of Galveston, Texas, to be located on the property belonging to the John Sealy Hospital. The will further states that said building should be used as a Pavilion for patients who can pay for all or part of their hospital expenses, but that said hospital should not be operated for profit but that receipts should be applied towards its upkeep. There is attached hereto a copy of said will for your information.

"The 18th Paragraph of the will reads as follows:

"'It is my desire that said building shall always be known and designated as the R. Waverley Smith Memorial Pavilion but said Pavilion shall be under the direction and control of the Hospital Board, as now or hereafter organized, of the John Sealy Hospital of Galveston, Texas.'

"The will was executed on March 10, 1936. Mrs. Smith died on October 12, 1938. At the time of the execution of the will, the John Sealy Hospital was

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Homer P. Rainey, President, Page 2

the property of and owned by the State of Texas for the use and benefit of the medical branch of the University of Texas.

"By a special act of the Legislature approved April 18, 1901, the charter of the City of Galveston was amended, said amendment so far as pertinent reads as follows:

"'The hospital in said city known as the John Sealy Hospital shall, so long as the same is under lease from the State to the City, be under the exclusive control of the Board of Managers to be known as the John Sealy Hospital Board and to consist of 5 members to be chosen or appointed, as hereinafter provided, every two years and within thirty days after installation of a new Board of Commissioners. Two of the members of said Hospital Board shall be selected from said Board of Commissioners, the members so selected to be the Commissioner of Finance & Revenue and Commissioner of Streets and Alleys, etc., two to be named or selected by the Board of Regents of the University of the State, and the fifth member to be named or selected by these four, provided, however, that all members of said John Sealy Hospital Board shall be residents of the City of Galveston, and provided further that in case a majority of said four cannot agree upon a fifth, then fifth member shall be named or designated by the President of the Board of Commissioners. (Vol. 11 Gammels Laws, page 121, Special Laws of 1901.)'

"Following the passage of this Act, the Board of Regents of the University of Texas executed a lease to the City of Galveston covering the property known as the John Sealy Hospital of Galveston.

"Thereafter, on May 9, 1913, the Board of Regents of the University of Texas again leased the premises to the City of Galveston for a period of twenty-five years from and after May 9, 1913, said lease expiring May 9, 1938.

"This lease was in full force and effect on March 10, 1936, the date of the execution of the will of Mrs.

Honorable Homer P. Rainey, President, Page 3

"Again on April 18, 1938, the Board of Regents of the University of Texas leased the property known as the John Sealy Hospital to the City of Galveston for a term of twenty-five years, from May 9, 1938 to May 9, 1963.

"Under the provisions of these leases and during the time the same were in force and effect, the John Sealy Hospital was under the control and management of the Board of Managers of the John Sealy Hospital.

"In January, 1941, the last mentioned lease was surrendered and cancelled for the City of Galveston, and the property comprising the John Sealy Hospital was returned to the Board of Regents of the University of Texas, the property being owned by the State of Texas for the use and benefit of the medical branch of the University of Texas. The City of Galveston has had no further right or interest in the operation of said hospital, but said hospital has been under the management and control of the Board of Regents of the University of Texas.

" * * *

"Please advise me whether or not under the will of Mrs. Jennie Sealy Smith the Board of Regents of the University of Texas is the successor to the Board of Managers of the John Sealy Hospital in respect of the control and management of the Waverley Smith Memorial Pavilion."

The answer to your question requires a construction of the clause in paragraph 18 of the will "but said Pavilion shall be under the direction and control of the Hospital Board, as now or hereafter organized, of the John Sealy Hospital of Galveston, Texas."

Let us first observe other pertinent provisions contained in the will. We quote the following therefrom:

"SEVENTEENTH: All the rest, residue and remainder of my estate, left after the payment of the legacies given in Clauses SECOND to FIFTEENTH, inclusive, of this will, I give, devise and bequeath to THE SEALY & SMITH FOUNDATION FOR THE JOHN SEALY HOSPITAL, to be held by it, in trust -

Honorable Homer P. Rainey, President, Page 4

"A.  To erect, furnish and equip a Hospital build-
ing to the memory of my husband, R. Waverley Smith, to
be erected in the City of Galveston, Texas, on the
block next to the Boulevard, bought by us and given to
said Foundation with that understanding.  Said building
shall be used as a private and semi-private pavilion
for the use of patients who can pay for all or part of
their hospital expenses but it is my intention that
said hospital shall not be operated for profit but that
its receipts shall be applied toward its upkeep.

"B.  After the expenditure of such amount from this
devise and bequeath for the purposes specified in Subdi-
vision A of this Clause SEVENTEENTH as in the judgment
of said Foundation may be necessary and proper, it is my
wish that the remainder shall continue to be held by
said Foundation in trust as a permanent endowment, the
income from which shall be available, as necessary, for
the purposes of keeping said building in repair and im-
proving its facilities; all surplus income to be applied
for the general purpose of said Foundation.  To this end
separate accounts shall be kept of the operating expenses
of said Pavilion and of all receipts from operation and
from other sources and any balance or balances of such
expenses, over and above receipts from other sources, may
be paid out of said income so far as it may suffice, after
payment for repairs and improvements of its facilities as
above provided.

"EIGHTEENTH:  It is my desire that said building
shall always be known and designated as THE R. WAVERLEY
SMITH MEMORIAL PAVILION, but said Pavilion shall be under
the direction and control of the Hospital Board, as now
or hereafter organized, of the John Sealy Hospital of
Galveston, Texas.

"NINETEENTH:  Appropriate tablets with the name of
said Pavilion, as herein given, inscribed thereon shall
be kept inserted in the walls thereof, as shall be desig-
nated by said Foundation and said name shall also be
placed on said building in some suitable manner to be
determined by said Foundation.

"TWENTIETH:  The said THE SEALY & SMITH FOUNDATION
FOR THE JOHN SEALY HOSPITAL shall always be known by that
name and shall have the charge and control of all enlarge-
ments, repairs and equipment of said Pavilion as above

provided and shall hve the possession, management, con-
trol and disbursement of the funds provided for said
Pavilion, and shall have full power to invest, reinvest,
convert money into property or property into money, to
sell and convey any property, real or personal, or
parts thereof, in order to carry out the purpose and
accomplish the objects of the trusts confided to it,
according to its best judgment.

"TWENTY-FIRST:  As the said the Sealy and Smith
Foundation for the John Sealy Hospital was incorporated
at my instance, to be the recipient of the charitable
devises and bequests hereinmade, it is my will and de-
sire that its Board of Directors shall always consist
of seven (7) Directors and it is my will and desire
that all vacancies hereafter occuring in said Board
shall be filled by the others of the Board then in of-
fice and that the body may thus be made self-perpetuat-
ing."

Two purposes are at once apparent in the will.  First, it
was not the intention of the testatrix that the R. Waverley Smith
Memorial Pavilion should be directed and controlled by the Sealy
and Smith Foundation for the John Sealy Hospital.  Second, it was
the intention of the testatrix that the Pavilion should be directed
and controlled by the governing board directing and controlling the
John Sealy Hospital.  We must decide if the second intention was
only if such governing board was, and should continue to be "the
Board of Managers to be known as the John Sealy Hospital Board"
created by House Bill 224, Acts of the 27th Legislature, which Board
of Managers would be in existence only so long as the John Sealy
Hospital should be under lease from the Board of Regents of the
University of Texas to the city of Galveston.

It cannot admit of debate that the testatrix declared
paragraph 18 of her will in the recognition that the particular
board controlling the John Sealy Hospital at the time of the execu-
tion of the will was subject to some change, and might be changed:
"as now or hereafter organized."  It is unreasonable to believe
that this provision was intended to refer only to changes in per-
sonnel; if so, it would constitute surplusage inasmuch as the dele-
gation of authority to any board continues irrespective of changes
in personnel.

Your letter points out that the will of Mrs. Smith was
executed on March 10, 1936, and that Mrs. Smith died on October 12,
1938.  At the time of each of these events the lease of the John
Sealy Hospital to the city of Galveston by the Board of Regents of

Honorable Homer P. Rainey, President, Page 6

the University was in existence whereunder the John Sealy Hospital was being controlled and managed by the Board of Managers pursuant to House Bill 224 of the 27th Legislature. Thereafter, in January, 1941, this lease was dissolved by mutual consent and the control and management of the John Sealy Hospital is now, as it was prior to the original lease, exercised by the Board of Regents of the University of Texas, the John Sealy Hospital itself being owned by the State of Texas for the use and benefit of the medical branch of the University of Texas.

We shall first review the cases in Texas upon the construction of wills. As early as the year 1858 it was declared by the Supreme Court of this State in Bell County vs. Alexander, 22 Tex. 351:

"It is a familiar doctrine, that in the construction of a will, the intention of the testator is the first and great object of inquiry; and the law will not suffer the intention to be defeated, merely because the testator has not clothed his ideas in technical language."

In McMullen vs. Simms, 37 S. W. (2d) 141, Justice Oritz of the Supreme Court, declared:

"There are no arbitrary or unbending rules in the construction of a will, as no two wills are in all details alike. In construing a will form should be subordinate to substance, and if the testator's intention can be ascertained, from a reading of the whole will, such intention must be given effect, however informal the language may be. 40 Cyc. p. 1396.

"Where the testator's intention is manifest, from the context of the will and surrounding circumstances, but is obscured by an inaccurate mode of expression, the language will be subordinated to the intention, and in order to carry out the intention of the will the court will, so far as possible, depart from the strict words, and read a word or phrase in a sense different from that which is ordinarily attributed to it, and for such purpose may change the language of the will, such as rejecting superfluous words, or restricting them in their application. * * * "

Honorable Homer P. Rainey, President, Page 7

It was said by the Supreme Court through the Commission of Appeals in Johnson vs. Goldstein, 215 S. W. 840:

"In construing a will, the main object is to ascertain the intention of the testator. * * * The main scheme or plan of the testator is always regarded as a safe criterion in arriving at his purpose. * * * "

The opinion in Cleveland vs. Cleveland, 89 Tex. 445, by the Supreme Court, reads in part as follows:

"While it is true that parol testimony is not admissible to vary or contradict the terms of the will or to supply that which has been omitted, yet, if the meaning of the words used, read in connection with other parts of the instrument, be doubtful, the surrounding circumstances may be considered to throw light upon the matter and enable the court to arrive at what the maker of the instrument intended by the use of the language under consideration. Hunt vs. White, 24 Tex. 652."

Jones' Unknown Heirs vs. Dorchester, 224 S. W. 596 (writ dismissed):

" * * * These text-writers, however, agree in declaring that the cardinal rule in the construction of wills is that the plain intent of the testator as evinced by the language of his will must prevail if that intent may be carried into effect without violating some deeper principle of public policy or of statute prohibition; that this intention is to be collected from the whole will taken together, and not from detached portions alone. As a part of this rule it is said that in interpreting a will the testator's general and controlling purpose should be regarded rather than any exalting or exciting ideas which may have dictated the terms of his will, and that the intent, as gathered from the whole will, overrides all technical rules which relate to the construction of words.

"In applying the rule which seeks to discover the testator's real intention, the language of the will should be taken, so far as may be according to the

Honorable Homer P. Rainey, President, Page 8

testator's own situation and surroundings, because
as the courts have observed, the language of the will
is not a universal interpretation, but they are equal-
ly supposed to speak the sense of the testator, and
his general intent must be gathered, not merely from
the language used in the will, but must be taken in
connection with his personal environment."

Winfree vs. Winfree, 139 S. W. 36:

"When the meaning of the words used in a will is
ambiguous, the court, in order to arrive at the inten-
tion of the testator, must be put as near as may be in
his environment, 'stand in his shoes, and look with
his perspective through his eyes,' and to enable the
court to do this parol evidence of the conditions and
circumstances surrounding the parties and the execution
of the instrument is always admissible. Peet v. Rail-
way Co., 70 Tex. 527, 8 S. W. 203; Weller vs. Weller,
22 Tex. Civ. App. 247, 54 S. W. 652; Clark v. Cattron,
23 Tex. Civ. App. 51, 56 S. W. 100."

It has been said by our Supreme Court "that a particular
construction of words, although somewhat variant from their more
natural and obvious import, may be strengthened by reference to
extraenous circumstances." Hawes vs. Foote, 64 Tex. 22.

"The court may lay aside technical rules and use
only common sense." Lindsey vs. Rose, 175 S. W. 829;
Tendick vs. Evetts, 38 Tex. 275.

Certainly a phrase should not be given a construction
which would defeat the intention of the testatrix. Johnston vs.
Reyes, 183 S. W. 7; Bloch vs. Woellert, 90 S. W.(2d) 653; Cleve-
land vs. Cleveland, supra; Kuehn vs. Bremer, 132 S. W. (2d) 295.

The cases are legion which announce the above principles.
We mention as likewise appropriate the following: McJunkin vs.
Republic National Bank of Dallas, 131 S. W. (2d) 1085; Lightfoot
vs. Poindexter, 199 S. W. 1152; Jones vs. Miller, 119 N. E. 324
(Ill.); Hollaway vs. Institute, 87 Atl. 269 (Md.); In re Howland's
Estate, 198 N. Y. Supp. 894.

Of course, no two wills are alike in all respects. That
of Mrs. Smith, in the particulars under consideration, is unlike

Honorable Homer P. Rainey, President, Page 9

any yet construed by the courts of Texas. We are therefore in the position described by the Commission of Appeals in Hasting vs. Jones, 215 S. W. 959:

"We have not found any decision by our Supreme Court where the facts were so closely analogous as to render it controlling in the present case, and we are therefore left to resort to general principles laid down by our courts in arriving at a proper conclusion."

Reaching a proper conclusion requires an understanding of the circumstances surrounding the execution of the will by Mrs. Smith. "We must look with her perspective through her eyes."

Mrs. Jennie Sealy Smith was the daughter of Mr. John Sealy, Sr., the sister of Mr. John Sealy, Jr., and the wife of Mr. R. Waverley Smith. The original John Sealy Hospital was constructed by the Estate of Mr. John Sealy, Sr., who died August 29, 1884. It was donated for a two-fold purpose: to provide a hospital for the indigent sick of the city and to provide a hospital for the benefit of the medical branch of the University of Texas in the event of its establishment at Galveston. The grant was to the city of Galveston with directions to transfer the hospital to the University if deemed proper by the city. Subsequently the medical branch was established at Galveston and the hospital was transferred to the State of Texas for the use and benefit of the University of Texas to be used for and in connection with the medical branch of the University.

The foregoing occurred in 1888. Subsequent appropriation bills by the Legislature and city ordinances of the city of Galveston recognized the John Sealy Hospital as under the control of the Board of Regents of the University of Texas. By a special act approved April 18, 1901, the Legislature amended the charter of the city of Galveston to authorize the lease of the John Sealy Hospital to the city of Galveston by the Board of Regents of the University and provided that "so long as the same is under lease from the State to the city" the hospital shall "be under the exclusive control of the Board of Managers to be known as the John Sealy Hospital Board." Other pertinent provisions of this act are set out in your request letter which we have quoted above. Your letter also reviews the history of the original and subsequent leases culminating in the surrender and cancellation of the last lease in January, 1941, as a result of which the control and management of the John Sealy Hospital reverted to the Board of Regents of the University of Texas.

Honorable Homer P. Rainey, President, Page 10

In 1898, 1899, 1900, and 1901, prior to the execution of the above described lease, Mr. John Sealy, Jr., and his sister, Mrs. Jennie Sealy Smith, expended approximately $30,000.00 in repairs to the John Sealy Hospital. In 1915 they constructed the Woman's Hospital at a cost of $125,000.00 and on May 31, 1915, executed a deed of gift to the Board of Regents for the Woman's Hospital directing that the property "shall be used for hospital purposes in connection with the John Sealy Hospital * * * under the direction of the Board of Managers of said John Sealy Hospital as now constituted, and their successors." The deed contained the following express conditions:

"The said property shall be used for hospital purposes in connection with the John Sealy Hospital in the City of Galveston, State of Texas, under the direction of the Board of Managers of said John Sealy Hospital as now constituted, and their successors, and shall be used for no other purpose or purposes whatsoever.

"In the event said property, or any portion thereof, shall at any time be used for any purpose whatsoever, except hospital purposes, in connection with the John Sealy Hospital in the City of Galveston, State of Texas, under the direction of the Board of Managers of said Hospital, the title to all of the property hereby conveyed shall ipso facto, and immediately, revert to and become the property of the Donors herein, their heirs or assigns, without any action on the part of said Donors, their heirs or assigns, and without the necessity of their making an entry upon said property, or declaring a forfeiture."

It is apparent from this conveyance (Mrs. Jennie Sealy Smith being one of the grantors) that the Woman's Hospital should be under the control and direction of the governing board of the John Sealy Hospital; it could not be seriously contended that the grant represented by such conveyance would lapse because of the cancellation of the aforementioned leases and the return of control of the John Sealy Hospital to the Board of Regents of the University of Texas.

In 1916 Mr. John Sealy, Jr., expended the sum of $270,000.-00 in remodeling and refurnishing the main hospital.

The Sealy and Smith Foundation for the John Sealy Hospital was chartered under the laws of the State of Texas on March 10, 1922, as a charitable corporation. The original incorporators were Mrs. Jennie Sealy Smith, Mr. John Sealy, Jr., and Mr. R. Waverley Smith. Thereafter Mr. John Sealy, Jr., and Mrs. Jennie Sealy Smith conveyed to the Foundation certain lots adjoining the hospital properties and prior to the death of Mr. Sealy the Sealy and Smith families contributed to the Foundation the sum of $999,063.91.

Mr. John Sealy, Jr., died February 19, 1926. Under his will one-half of his residuary estate was left immediately to the Sealy and Smith Foundation for the John Sealy Hospital for the support, maintenance, operation and repair of the John Sealy Hospital or for the construction of additional buildings to be operated in connection therewith.

By deed dated April 21, 1938, prior to the death of Mrs. Jennie Sealy Smith, the Sealy and Smith Foundation for the John Sealy Hospital conveyed to the State of Texas, acting by and through the Board of Regents of the University of Texas, Lots 1, 2, 3, 4, 8, 9, 10, 11, 12, 13 and 14 in Block 608, and Lots 1 to 7, inclusive, in Block 548, in the city of Galveston. Mrs. Jennie Sealy Smith was a Director of the Foundation. The deed represented an investment of $1,250,000.00 and included the out-patient clinic, the new children's hospital and the new nurse's home.

Mrs. Jennie Sealy Smith was a member of the Board of Managers of the John Sealy Hospital, under the Legislative act referred to, at the time of her death, having been appointed thereto by the Board of Regents of the University of Texas.

The teaching hospital of the medical branch of the University of Texas, the John Sealy Hospital and the Woman's Hospital, represent the liberal beneficence of Mrs. Jennie Sealy Smith and other members of the Sealy family. While the philanthropies of the family were directed to the achievement of two purposes, the care of the indigent sick of Galveston and the ownership by the state of the properties as a teaching hospital for the medical branch of the University, underlying all the grants and donations is the fact that they were made to the State of Texas acting by and through the Board of Regents of the University of Texas. They were made in the knowledge and recognition that the Board of Regents was the repository of the power of control and management appertaining to the medical branch of the University and the John Sealy Hospital in connection therewith. None of the grants were to the State of Texas, or to

the medical branch of the University of Texas, or to the Board of Regents, only for so long as the John Sealy Hospital should be under the control and management of the Board of Managers created by House Bill No. 224 of the 27th Legislature.

It is therefore entirely reasonable to believe, in the absence of a clearly expressed intent to the contrary, that Mrs. Jennie Sealy Smith intended in her will that the additional donations to the John Sealy Hospital should be in conformity with prior acts of herself and her family. And when we analyze the will of Mrs. Smith such intentions are obvious: first, that the R. Waverley Smith Memorial Pavilion should be constructed and equipped by the Sealy and Smith Foundation for the John Sealy Hospital; second, that the Pavilion should be controlled and managed by the same board controlling and managing the John Sealy Hospital. We do not believe that the manifest intention of Mrs. Smith should be defeated because of an asserted obscure or inaccurate mode of expression.

The particular board in control of the John Sealy Hospital at the time of the execution of the will, and of the death of the testatrix, was the Board of Managers created under House Bill 224 of the 27th Legislature. This board was to be in existence only so long as the John Sealy Hospital was under lease from the state to the city of Galveston. Because of her intimate knowledge of the institution and her membership upon the Board of Managers, Mrs. Smith was fully cognizant of these facts. She recognized in her will that there might be a change in the particular board controlling the John Sealy Hospital. It is unreasonable to believe that Mrs. Smith had in mind only changes in personnel. It is reasonable to believe that Mrs. Smith had in mind a change in the particular board controlling the John Sealy Hospital. Her fundamental desire was that the same board managing the John Sealy Hospital should also manage the Pavilion which was to be constructed in connection with it and which, in the execution of its purpose, would necessarily be operated in connection with the main hospital. The undesirability, in such a situation, of one board controlling and managing the John Sealy Hospital and another board controlling and managing the Pavilion, is apparent. That Mrs. Smith did not intend such a result is completely demonstrated by the provision placing the direction and control of the Pavilion in the Hospital Board of the John Sealy Hospital as at that time or subsequently organized.

Under the authorities which we have reviewed, the courts of Texas will construe the will of Mrs. Smith from its four corners

Honorable Homer P. Rainey, President, Page 13

and in the light of the personal circumstances surrounding the testatrix. In so doing the conclusion will be reached, in our opinion, that the proper construction is that the board controlling and managing the John Sealy Hospital, which is at this time the Board of Regents of the University of Texas, will possess, under the will of Mrs. Jennie Sealy Smith, the right of the control and management of the R. Waverley Smith Memorial Pavilion after its construction by the Sealy and Smith Foundation for the John Sealy Hospital. Such is the opinion of this department.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Zollie C. Steakley
Assistant

APPROVED MAR 14, 1942

FIRST ASSISTANT
ATTORNEY GENERAL

ZCS:ej

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE